**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**ARTIE JOHNSON**                                                              **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO.:3:13-cv-877-DCB-MTP**

**CAROLYN W. COLVIN**
**Acting Commissioner of Social Security Administration**                      **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Artie Johnson ("Johnson") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3) seeking judicial review of a final decision of the Acting Commissioner of Social

Security Administration denying his claim for disability insurance benefits and supplemental

security income.  The matter is now before the Court on the Complaint [1], Plaintiff's Brief in

Support of Complaint [10] and Defendant's Motion for an Order Affirming the Decision of the

Commissioner [12].  Having considered the pleadings, the record and the applicable law, and

being fully advised in the premises, the undersigned recommends that the Acting

Commissioner's decision be AFFIRMED.

## PROCEDURAL HISTORY

On October 1, 2010, Plaintiff applied for a period of disability, disability insurance

benefits ("SSD") and supplemental security income ("SSI") under the Social Security Act,

alleging disability as of December 1, 2009, primarily due to impaired hearing. (Administrative

Record [8] at pp. 26, 70, 111, 115, 145, 171-174 and 178).[1]  Plaintiff's claims were denied

---

[1] For ease of reference, the administrative record is cited to herein by reference to the
Court's docket number and docket page number in the federal court record (not the
Administrative Record page number).

1

initially and upon reconsideration ([8] at pp. 61, 65, 71 and 74).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  ([8] at pp. 77-78).

On November 29, 2011, a hearing was convened before ALJ Ted Armbruster, in which the Claimant elected to proceed *pro se*.  ([8] at p. 27).  The ALJ heard testimony from Plaintiff and William Morris Selby, a vocational expert ("VE").  ([8] at pp. 24-56).  On January 23, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. ([8] at pp. 12-20).  Plaintiff then retained counsel, appealed and submitted additional medical evidence.  ([8] at pp. 10-11).  On February 7, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the [Acting] Commissioner. ([8] at pp. 4-7).

Aggrieved by the Acting Commissioner's decision to deny benefits, Plaintiff filed a Complaint in this Court on March 7, 2013, seeking an order reversing and setting aside the decision of the Acting Commissioner and ALJ.  (Complaint [1] at p. 2).  The Acting Commissioner answered the Complaint, denying that Plaintiff is entitled to any relief. (Answer [7]).  The parties having briefed the issues in this matter pursuant to the Court's Scheduling Order [3], the matter is now ripe for decision.

## MEDICAL/FACTUAL HISTORY

Plaintiff was forty-two years old at the time of the hearing before the ALJ on November 29, 2011.  ([8] at p. 31).  His alleged disability onset date was December 1, 2009. ([8] at p. 26). Plaintiff completed one year of college and has past work experience in the fast food industry, maintenance, janitorial services, water treatment, warehouse/factory work and auto parts inspection.  ([8] at pp. 31-36 and 150-156).  Plaintiff alleges that he is disabled due to severe hearing loss in his left ear, a partially collapsed right ear and ear pain.  ([8] at pp. 195, 199, 57-60

2

and 44-46).

Plaintiff asserts that he was born with impaired hearing from which he has suffered his entire lifetime.  As an adolescent, he required speech classes because of his hearing deficit; he also had to repeat a few grades in school because he could not hear well enough to learn.  ([8] at pp. 47-48).  In the past, he tried a hearing aid which caused more problems than it solved because it picked up "a lot of sounds."  ([8] at p. 43).  Plaintiff claims his hearing loss has progressed to the point he cannot hear well enough to function at work, that he needs surgery to correct the problem, but he cannot afford the surgery.  ([8] at pp. 43-45 and 48).   He alleges that at times he cannot hear at all; he was told in the past that he could be totally deaf by the time he turned fifty.  ([8] p. 46 an 49).  After he filed a claim for disability, he alleges that his ears became painful; and he submitted a medication list to the ALJ showing that he was taking ibuprofen or aspirin for ear pain.  ([8] at pp. 28-29 and 48-49).

Plaintiff produced no medical records to document a lifetime history of hearing impairment as he alleged.  The only independent medical records obtained on his behalf predating the disability hearing were from an emergency room visit on December 5, 2009, and follow up for suture removal on December 14, 2005.[2]  ([8] at pp. 203-225).  Although the propagating event had nothing to do with his hearing impairment or his ears, his HEENT (head, eyes, ears, nose and throat) exam in the emergency room indicated that both his ear canals and tympanic membranes (eardrums) were normal.  ([8] at p. 217).  Nothing in the emergency room records suggests any hearing impairment; notes state that he understood instructions and that he

---

[2]These were from a fight during which Mr. Johnson sustained a laceration to his forehead. ([8] at pp. 198 and 203-225).

was able to speak clearly.  ([8] at pp. 209 and 216-221).

However, two consultant reports were in the record that predated his SSD and SSI applications.[3]  Dr. Charles Gammel, contracted by the Disability Determination Services ("DDS"), conducted an audiology evaluation on March 8, 2010.  ([8] at pp. 226-227).  The results indicated a "mild sensorineural hearing loss[4] in the right ear and a moderate to severe sensorineural loss in the left ear with good speech discrimination when the sound level is appropriate."  ([8] at p. 226).  He added that the use of a stock hearing aid suggested good potential for aided benefit.  ([8] at p. 226).

A week later, on March 16, 2010, Dr. Andrew Yates, also contracted by DDS, performed a consultative examination.  He documented Plaintiff's history of alleged hearing impairment since birth, placement of tubes in his ears, and the results of Dr. Gammel's audiology tests.  According to the history, Dr. Gammel had told Mr. Johnson that he would need hearing aids or surgery.  Dr. Yates discovered what appeared to be a small perforation in the left eardrum, as well as a dull right eardrum.  He suspected fluid behind the right eardrum.  ([8] at pp. 228-229).  He noted that Plaintiff's speech was easily understandable and that he could hear "conversational tones without any difficulty, even with his back to the examiner."  ([8] at p. 228).  His overall impression reflected a history of decreased hearing acuity, but that Mr. Johnson could hear "conversational tones without problems."  ([8] at p. 229).

---

[3]The plaintiff had previously applied for disability in 2009. ([8] at p. 198).

[4]According to the American Speech-Language-Hearing Association, sensorineural hearing loss occurs when there is damage to the inner ear (cochlea), or to the nerve pathways from the inner ear to the brain.  It is the most common type of hearing loss and is usually not correctable with surgery or medicine.  http://www.asha.org/public/hearing/sensorineural-hearing-loss (last visited June 11, 2014).

After the hearing, on December 15, 2011, the Plaintiff obtained a hearing screen from Jackson Hinds Comprehensive Health Care ("Jackson Hinds"). The nurse practitioner diagnosed acute serous otitis media (ear infection)[5] of both ears and prescribed an oral antibiotic. The hearing screen results were reported as, "right ear: 4000 hz at can[']t hear decibel and left ear: 4000 hz at 70 decibel," with no explanation or interpretation. ([8] at pp. 231-232). He was scheduled for a follow up in two weeks ([9] at p. 232), but there are no follow up records from Jackson Hinds in the administrative record.

On March 26, 2012, Mr. Johnson complained of ear infections and decreased hearing to Dr. Alfred G. Windham. His history reflected "hearing loss on the left." ([8] at p. 237). Dr. Windham's examination revealed a right eardrum retraction with fluid, which he described as "very retracted, possibly going down to the middle ear."[6] ([8] at p. 237). He also noted mucoid drainage from the left ear. His impression was of "serous otitis media, external otitis,[7] and

[5]Serous otitis media is a collection of non-infected fluid in the middle ear space. If the fluid persists, it can cause temporary decrease in hearing and may become infected, or "acute otitis media." http://www.chop.edu/healthinfo/otitis-media-with-effusion.html (last visited June 11, 2014).

[6]A retracted eardrum occurs when a person's eardrum gets pulled into the space behind it, caused by pressure that is too low in the middle ear. Infection is often the cause of the problem. http://www.wisegeek.com/what-is-a-retracted-eardrum.htm (last visited June 11, 2014).

[7]External otitis refers to inflammation or infection of the outer ear and ear canal. http://www.nlm.nih.gov/medlineplus/ency/article/001336.htm (last visited June 11, 2014).

possible cholesteatoma."[8]  ([8] at p. 237).  His treatment plan included Ciprodex drops[9] to the

right ear and an audiogram in two weeks.  ([8] at p. 237).

Mr. Johnson returned to Dr. Windham on April 9, 2012.  Dr. Windham found fluid

bilaterally, although both ears were clear.  Both eardrums were also clear but retracted.  There

was no evidence of a cholesteatoma.  Dr. Windham conducted tympanometry[10] and audiometry[11]

tests.  Both tympanograms were flat.[12]  The audiogram results showed "profound hearing loss in

both ears."  ([8] at p. 236).  His speech threshold[13] was 100 decibels in the right ear and 105

---

[8]A cholesteatoma is a non-cancerous skin cyst that develops in the middle section of the ear that can be congenital or caused by repeated ear infections. http://www.healthline.com/health/cholesteatoma#Overview1 (last visited June 11, 2014).

[9]Ciprodex is an antibiotic/steroid combination used in the treatment of middle ear and outer ear canal infections.  http://www.rxlist.com/ciprodex-drug/medication-guide.htm (last visited June 11, 2014).

[10]Tympanometry is an examination to test the condition of the middle ear and mobility of the eardrum.  It is not a hearing test but is used to assist the physician in distinguishing between sensorineural and conductive hearing loss, as well as diagnosis of otitis media. http://en.wikipedia.org/wiki/Tympanometry (last visited June 11, 2014).

[11]An audiometry exam tests one's ability to hear sounds, based upon loudness/intensity, measured in decibels, and speed of sound wave vibrations/tone, measured in Hertz. http://www.nlm.nih.gov/medlineplus/ency/article/003341d/htm (last visited June 11, 2014).

[12]Flat tympanogram is consistent with fluid or infection behind the eardrum. http://www.audiologyonline.com/ask-the-experts/common-types-of-tympanograms-361 (last visited June 11, 2014).

[13]Speech recognition threshold is the minimum hearing level for speech at which an individual can recognize 50% of the speech material.  Speech detection threshold is the minimum hearing level for speech at which an individual can just discern the presence of speech material 50% of the time.  http://www.asha.org/policy/GL1988-00008 (last visited June 11, 2014).  One source equates 100 decibels to a walkman at maximum level, stating that normal conversation is about 60 decibels.  http://www.physicsclassroom.com/class/sound/u1l2b.cfm (last visited June 11, 2014).

decibels in the left ear.  Dr. Windham commented that he thought Mr. Johnson read lips; his

impression was serous otitis media and profound hearing loss.  It was recommended that he

consult with vocational rehabilitation for tube placement and to consider cochlear implants.  Dr.

Windham was to see him after consultation with vocational rehabilitation ([8] at p. 236); but

there are no further records, either from vocational rehabilitation or from Dr. Windham.

## BURDEN OF PROOF

In *Harrell v. Bowen*, the Fifth Circuit detailed the shifting burden of proof that applies to

disability determinations:

> An individual applying for disability and SSI benefits bears the initial burden of
> proving that he is disabled for purposes of the Social Security Act.  Once the
> claimant satisfies his initial burden, the [Commissioner] then bears the burden of
> establishing that the claimant is capable of performing substantial gainful activity and
> therefore, not disabled.  In determining whether or not a claimant is capable of
> performing substantial gainful activity, the [Commissioner] utilizes a five-step
> sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
> > 1.  An individual who is working and engaging in substantial gainful activity
> > will not be found disabled regardless of the medical findings.
> >
> > 2.  An individual who does not have a 'severe impairment' will not be found
> > to be disabled.
> >
> > 3.  An individual who meets or equals a listed impairment in Appendix 1 of
> > the regulations will be considered disabled without consideration of
> > vocational factors.
> >
> > 4.  If an individual is capable of performing the work he has done in the past,
> > a finding of 'not disabled' must be made.
> >
> > 5.  If an individual's impairment precludes him from performing his past
> > work, other factors including age, education, past work experience, and
> > residual functional capacity must be considered to determine if other work
> > can be performed.

862 F.2d 471, 475 (5th Cir. 1988).  The claimant bears the burden at the first four steps, but the burden thereafter shifts to the Commissioner at step five. Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut this finding.  *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir.2005).  A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell,* 862 F.2d at 475 (citations omitted).

## ADMINISTRATIVE LAW JUDGE'S ANALYSIS

On January 23, 2012, after considering the testimony given at the November 29, 2011, hearing along with the medical and other records submitted,[14] the ALJ rendered his decision that Plaintiff was not disabled. ([8] at pp. 12-20).  The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act though December 31, 2015.

At step one of the evaluation process,[15] the ALJ made no ruling with regard to whether the Plaintiff had engaged in any substantial gainful activity since December 1, 2009, the alleged onset date.  He made note that the Plaintiff had engaged in substantial gainful employment since that alleged onset date, having worked and reported earnings in 2010 before being laid off.  He further noted that the Plaintiff had been continuing to accept temporary work, as well as

---

[14]The ALJ considered the medical evidence from the two consultants, Drs. Gammel and Yates, as well as the opinion evidence of DDS medical consultant, Dr. Sylvester McDonnieal, who had opined on November 3, 2010, that the Claimant was not disabled. ([8] at pp. 19 and 57-58).  Mr. Johnson submitted no opinion evidence or a medical source statement for consideration.  ([8] at p. 19).  The audiology and medical records from December 2011 through April 2012 were not presented to the ALJ, but they were submitted to the Appeals Council for consideration.  ([8] at p. 7).

[15] The ALJ applied the evaluation process set forth in 20 C.F.R. §§ 404.1520(b), 404.1571, 416.920(b) and 416.971.

unemployment benefits, and that he had several pending applications for employment.  However, he reserved ruling on step one due to his findings at step two. ([8] at p. 17).

At step two, the ALJ found that Plaintiff had a medically determinable, non-severe impairment, hearing loss.  He found the hearing impairment was only a "slight abnormality having such a minimal effect that it would not be expected to interfere with his ability to work, irrespective of age, education and work experience."[16]  ([8] at pp. 7-8).  According to the ALJ, in making this finding, he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence and also considered opinion evidence.[17] ([9] at p. 27).

Having concluded that the Plaintiff did not have a severe impairment, the ALJ did not proceed to steps three, four or five.  Accordingly, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act. ([8] at p. 20).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).   To be substantial, the evidence "must do

---

[16]20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c) and 416.921; *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

[17]20 C.F.R. §§ 404.1527, 404.1529, 416.929, 416.927; and SSRs 96-4p, 96-7p, 96-2p, 96-5p, 96-6p; and 06-3p.

more than create a suspicion of the existence of the fact to be established." *Id.* (citations omitted).  However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475.  If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617.  Moreover, "'[p]rocedural perfection in administrative proceedings is not required' so long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff brings this action, arguing that the ALJ erred by "ignoring medical evidence," specifically, by failing to consider evidence from Plaintiff's treating physician, Dr. Alfred Windham, in making his determinations.  ([10] at p. 4).  Plaintiff suggests that "the ALJ did not give any weight to Mr. Johnson's treating doctor and failed to even discuss the opinion in determining the severity of Mr. Johnson's hearing loss" ([10] at p. 6),  and, further, that "the ALJ failed to consider or even discuss the opinion of the [sic] Dr. Widham [sic] who actually examined Mr. Johnson.[18]  ([10] at p. 7). The Plaintiff argues that had Dr. Windham's opinion

---

[18]Plaintiff included additional such statements throughout his brief.  For example, in referencing factors to be considered when a treating physician's opinion is not given controlling weight, Plaintiff argued, "[T]he ALJ failed to discuss any of these factors in his decision and

been factored into the evidence mix, the ALJ would have found that the Plaintiff's hearing impairment was severe.  ([10] at pp.  7-8).

      As Defendant has pointed out, Dr. Windham's March and April 2012 records post-date the ALJ's January 2012 opinion and were obviously not made available to the ALJ for consideration. The ALJ cannot be faulted for not discussing evidence that was never put before him. However, the records were submitted to the Appeals Council, which received them and found "no reason under our rules to review the Administrative Law Judge's decision."  ([8] at pp. 4-7).  Therefore, the issue which the Court will address concerns the duties of the Appeals Council upon receipt of medical evidence which post-dates an ALJ's decision.

      Social Security claimants usually have one opportunity to prove their disability. Otherwise, the administrative proceedings would become an "unending merry-go-round." *Nehlig v. Comm'r of Soc. Sec. Admin.*, 40 F. Supp. 2d 841, 849 (E.D. Tex. 1999).  Allowances may be made in situations where the claimant's medical condition may not be fully developed at the time of the hearing and the new evidence presented to the Appeals Council would probably have changed the outcome.  *Ripley v. Chater,* 67 F.3d 552, 554 (5th Cir.1995); *Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir.1994);  *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir.1989).

      New evidence that concerns a subsequently acquired disability or deterioration of a condition that was not previously disabling should be addressed in a new application for disability benefits rather than on remand. *See, e.g., Leggett v. Chater,* 67 F.3d 558, 567 (5th Cir.1995) (rejecting request for remand when new evidence consisted of exams taken three years

---

failed to address why Dr. Windham's opinion that Mr. Johnson suffered from 'profound hearing loss' was not considered."  ([10] at p. 7).

after the disability application was filed, and at least a year after the ALJ's decision); *see also, Smith ex rel. Smith v. Apfel*, 87 F. Supp. 2d 621, 627 (W.D. La. 2000) (denying remand upon submission of new evidence revealing disability six months after ALJ's decision).

The Appeals Council is not required to provide a detailed discussion for rejecting new evidence that it receives. *See Jones v. Astrue,* 228 Fed. App'x 403, 407 (5th Cir.2007); *Higginbotham v. Barnhart,* 405 F.3d 332, 335 at n. 1 (5th. Cir.2005) (noting that "the requirement of a detailed discussion of additional evidence was suspended" in 1995). Thus, the Appeals Council here was not required to explain whether it determined that the new evidence supported a new disability or a deterioration in Mr. Johnson's hearing impairment, or whether it would not likely have changed the outcome. Its stated rationale is sufficient. *See, e.g., Musial v. Astrue*, 4:10-CV-280-A, 2011 WL 5346307 (N.D. Tex. Nov. 3, 2011) (finding that "no reason under [the] rules to review the [ALJ's] decision" was sufficient to preclude remand).

The undersigned concludes that Appeals Council's decision was correct because the new evidence, at best, supported deterioration of a condition that was not previously disabling. As discussed below, substantial evidence exists to support the ALJ's decision that Mr. Johnson's condition, hearing loss, was not previously disabling, as it was not "severe" from the alleged date of disability onset through the hearing date.

An impairment is not severe if it does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). The medical evidence from 2009 is limited, but establishes that Plaintiff's ear canals and eardrums were normal two weeks after the alleged date of disability onset. The medical evidence from Dr. Gammel in 2010 showed only a mild hearing impairment in the right ear, moderate to severe in

the left.  The condition would have been improved with a hearing device.  Dr. Yates found that

the Plaintiff could hear normal voice tones even with his back to the speaker.  Neither doctor

stated whether Plaintiff's hearing impairment interfered at all with his ability to work.

Accordingly, Dr. McDonnieal opined that the disability was not severe.[19]

      With this information, the ALJ "project[ed] as best he [could]" as he questioned the

Plaintiff.  ([8] at p. 26).  He only had to repeat himself to the Plaintiff once during the hearing

([8] at p. 48), which lasted about forty-five minutes.  ([8] at pp. 26, 56 (commencing at 1:09 p.m.

and concluding at 1:54 p.m.)).[20]   The transcript as a whole evidences Plaintiff's understanding of

the questions.  He was specifically asked how his condition interfered with his ability to work, to

which he responded:

> My ears are very painful on a regular basis, and they're obviously leaking fluid on
> a regular basis.  People are always telling me, you know, the item I said, like I
> can't hear and understand when people are talking to me a lot of times.  They have
> to say it over and over again, and people are getting frustrated, and then I'm trying
> to hear, and I hear – I'm not hearing what I thought I heard, and people think I'm
> crazy because I can't hear. ... I can't work right now because the employers are –
> they are tired of, you know, explaining where you can hear, you know, on their
> level.  And I try to hear it, and I can hear what I thought they said, and I'll be
> wrong. ...

([8] at pp. 44-45).

      The ALJ found his statements concerning the "intensity, persistence and limiting effects

of [the] symptoms not credible."  ([8] at p. 19).  In supporting his decision, the ALJ not only

cited to the medical evidence in the record, but also relied upon the fact that the Plaintiff "ha[d]

---

[19]*See* Footnote 14.

[20]In addition, before the VE was admonished to speak up, Plaintiff misunderstood one
word of his testimony.  ([8] at p. 51).

been receiving unemployment benefits, which represent[ed] that he [was] able and available for work," coupled with the fact that he continued to accept work.  ([8] and p. 19).

     As the ALJ determined that Mr. Johnson's hearing loss was not severe, benefits were denied.  Therefore, Dr. Windham's records,[21] which were submitted after the hearing, are analyzed against that background.  Mr. Johnson began treating with Dr. Windham after having been diagnosed with an ear infection which had been medically treated with oral anitbiotics.  Dr. Windham treated his right ear with an antibiotic steroid drop.  After the inflammation and infection had cleared, Dr. Windham performed hearing tests and concluded that Plaintiff had profound hearing loss in both ears.  ([8] at pp. 236-237).  Nothing in the records of Dr. Windham establishes that Plaintiff had profound hearing loss in both ears prior to the hearing before the ALJ or on the date of disability.

     As Mr. Johnson testified, his condition was one that was expected to worsen over time.  ([8] at p. 49).  Dr. Windham's records, dated March-April 2012, more than two years after the alleged date of disability and a few months after the ALJ's decision, evidence or support possible progression of Mr. Johnson's hearing impairment.  Indeed, Dr. Windham's notes for March 26, 2012, indicate that Plaintiff's medical history included only "hearing loss on the left."  ([8] at p. 237).  Because the records concern a deterioration of Mr. Johnson's condition which had not been disabling or "severe" beforehand, remand is not warranted.  *See Leggett,* 67 F.3d at 567.

     Plaintiff may file a new petition if he so desires to address any deterioration in his

---

[21]Plaintiff mentions the December 2011 nurse practitioner's records from Jackson Hinds but does not argue that they support a finding of severe impairment or that any error occurred because they are not discussed in the ALJ's decision or the denial for review from the Appeals Council.

condition.  However, the record before the ALJ and the Appeals council supports the denial of benefits and should be affirmed.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and utilizes correct legal standards.  It is, therefore, the recommendation of the undersigned that Defendant's Motion for an Order Affirming the Decision of the Commissioner [12] be granted and that the Complaint [1] be dismissed.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the Judge, the Magistrate Judge and the opposing party.  The District Judge at the time may accept, reject, or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 17th day of June, 2014.

s/ Michael T. Parker
United States Magistrate Judge